IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREGORY TURLEY, #N-08083**  ) | |
| ) | |
| **Plaintiff,**  ) | |
| ) | |
| vs.  ) | **CIVIL NO. 09-cv-829-MJR** |
| ) | |
| **DONALD GAETZ, et al.,**  ) | |
| ) | |
| **Defendants.**  ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**Introduction and Procedural History:**

Plaintiff, an inmate in the Menard Correctional Center, filed the above-captioned lawsuit in this Court on October 7, 2009.  On this same date Plaintiff moved for leave to proceed in forma pauperis (ifp) herein.  On November 12, 2009 the Court denied Plaintiff's ifp request after determining that he already had "three strikes" under 28 U.S.C. § 1915(g).  That determination was made using the method of assessing strikes which was employed at that time (counting dismissed *claims* as well as dismissed *actions* as strikes). In the Order denying Plaintiff's ifp status, the Court directed Plaintiff to pay the $350 filing fee within 15 days or face dismissal of his suit.  Plaintiff did not do so.

Instead, he appealed the November 2009 Order to the United States Court of Appeals for the Seventh Circuit.  Plaintiff prevailed on appeal.  The Seventh Circuit reversed this Court's ifp ruling and remanded the case, relying on an opinion holding that strikes should be assessed only where the

1

entire action is dismissed under 1915A, instead of when a part of the action is dismissed. *See Turley v. Gaetz*, 625 F.3d 1005 (7th Cir. 2010). Because Plaintiff did not have three strikes, he was not precluded from bringing this lawsuit.

Upon remand, the Court is reconsidering Plaintiff's ifp motion.. Filed under 42 U.S.C. §1983, this action for deprivations of constitutional rights comes now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. §1915A. That statute provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds that some of the claims in the complaint may be dismissed at this point in the litigation.

**Facts:**

Plaintiff filed grievances on the 21st and 30th of July, 2009 regarding acts of harassment and abusive conditions at the Menard Correctional Center. On August 6th Defendants D. Rednour, J. Cowan, and Spiller retaliated against Plaintiff for filing grievances by placing him in protective custody, where all his personal property was confiscated. Plaintiff made Defendants Gaetz and

Hartline aware of the retaliation, but they did nothing.

While in protective custody, Plaintiff was further retaliated against when he was issued a disciplinary report by Defendants Quillman and Schnicker, which falsely stated that Plaintiff had threatened an officer. A disciplinary hearing was held on August 13th, wherein Defendants Gilbert and Lee refused to call Plaintiff's witnesses before finding Plaintiff guilty. Plaintiff made Defendant R. Cowan aware that he had witnesses who would testify that he was innocent, but she did not contact these witnesses.

Plaintiff was then removed to segregation, where he asked Defendant Owens to put a stop to the actions of the other prison staff. Defendant Owens gave Plaintiff the appropriate forms to fill out requesting protective custody, but did nothing further. Plaintiff sent a copy of these completed forms to Defendant Thomas, who then called Plaintiff to an interview. Defendant Lindenburg made unspecified threatening statements to Plaintiff on his way to the interview.

Defendant Lindenburg then took Plaintiff to the bull pen to await an escort back to his cell. Plaintiff was standing in close proximity to a steel gate, which Defendant Lindenburg slammed shut a number of times while Plaintiff was standing next to it, causing his ear drum to pop which resulted in head pain and temporary hearing difficulties. Plaintiff then informed Defendants Gaetz and Thomas that he needed protection from Defendant Lindenburg, but both Defendants failed to do anything to protect Plaintiff. Plaintiff also sent grievances to Defendants J. Cowan and Cartwright, but these grievances were not answered and could not be located.

Plaintiff lastly alleges that Defendants Lawrence, Hamilton, and Spiller all worked to ensure that he was denied a job assignment in retaliation for his filing of grievances.

**Discussion:**

To facilitate the orderly management of future proceedings in this case, and in accord with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court will organize the claims in Plaintiff's *pro se* complaint and related pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and Orders herein, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1: Retaliation**

Plaintiff alleges that he was moved to protective custody by Defendants D. Rednour, J. Cowan, and Spiller in retaliation for filing grievances. While in protective custody, Plaintiff was issued a faulty disciplinary ticket by Defendants Quillman and Schnicker, also in retaliation for filing grievances. And finally, Plaintiff alleges that he was further retaliated against by Defendants Lawrence, Hamilton, and Spiller when they ensured that Plaintiff was denied a job assignment, again for filing grievances.

Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under §1983. *See Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper."); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995)(retaliatory discipline).

Plaintiff alleges that the actions listed above were taken by the Defendants in an attempt to

retaliate against Plaintiff's writing of grievances, a protected right. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the protected right and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Plaintiff has specified that a protected right, his right to file grievances, has been challenged by the various retaliatory actions of Defendants D. Rednour, J. Cowan, Spiller, Quillman, Schnicker, Lawrence, and Hamilton. Again, even though some of the actions taken by the Defendants would not alone rise to claim status, if they were taken in an attempt to retaliate against Plaintiff's first amendment rights, they are in fact actionable. For this reason this count against Defendants D. Rednour, J. Cowan, Spiller, Quillman, Schnicker, Lawrence, and Hamilton cannot be dismissed at this time.

**Count 2: Failure to Protect**

Plaintiff claims that he told Defendants Gaetz and Hartline about the retaliatory actions taken by the other Defendants, but that they failed to act to protect Plaintiff. He also alleges that he informed Defendant R. Cowan that he had witnesses to call at a disciplinary hearing that had not been heard, but that she failed to do anything to correct the wrong. At some later point Plaintiff asked Defendant Owens to stop the actions of the other Defendants, but he responded by providing Plaintiff with forms to fill out. Plaintiff felt threatened by other correctional officers, and told

Defendants Gaetz, Thomas, J. Cowan, and Cartwright that he needed protection from those officers, but they failed to intervene.

Plaintiff seems to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to §1983 actions). As Chief Judge Easterbrook has stated:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [results]. That can't be right. *See Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

*Burks*, 555 F.3d at 595.

Plaintiff does not allege in this count that Defendants Gaetz, Hartline, R. Cowan, Owens, Thomas, J. Cowan, and Cartwright engaged in the wrongful activity themselves. Instead, Plaintiff

complains that these Defendants did not curb the actions of others. This Court is not willing to impose a duty on these Defendants to ensure that other actors are doing their jobs. Instead, a Defendant is responsible for his or her own misdeeds, and because Defendants Gaetz, Hartline, R. Cowan, Owens, Thomas, J. Cowan, and Cartwright committed no misdeeds themselves, this count is dismissed with prejudice.

### Count 3: Due Process

A disciplinary hearing was held regarding a ticket Plaintiff received, and he informed Defendants Lee and Gilbert that he had witnesses he would like to call. Defendants Lee and Gilbert denied this request and the hearing proceeded without Plaintiff's witnesses being heard. Plaintiff contends that his inability to call witnesses at his disciplinary hearing was a violation of his due process rights.

This right was considered in the *Wilkinson v. Austin* case, where it was determined that a prison has a legitimate interest in controlling individual inmates as well as the prison in general, and that this interest is threatened by allowing inmates the opportunity to call witnesses to disciplinary hearings, making the potential value of the witness testimony small in comparison to the cost to security. *Wilkinson v. Austin*, 545 U.S. 209, 228 (2005). Where the inquiry draws more on the experience of prison administrators, and where the Prison's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668, and *Hewitt v. Helms,* 459, U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), provide the appropriate model. *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005).

Were an inmate allowed to call witnesses or provide other attributes of an adversary hearing, both the prison's immediate objective of controlling the prisoner and its greater objective of controlling the prison could be defeated. This problem, moreover, is not alleviated by providing an exemption for witnesses who pose a hazard, for nothing in the record indicates simple mechanisms exist to determine when witnesses may be called without fear of reprisal. The danger to witnesses, and the difficulty in obtaining their cooperation, make the probable value of an adversary-type hearing doubtful in comparison to its obvious costs. *Id.* at 228.

Plaintiff does not have a due process right to have his witnesses called in a disciplinary hearing. He does not allege that the hearing was in any other way faulty so as to violate due process. Because there has been no due process violation, this count against Defendants Lee and Gilbert is dismissed with prejudice.

### Count 4: Excessive Force

While Plaintiff was in the bull pen area of the prison awaiting an escort back to his cell, Defendant Lindenburg slammed the heavy steel door shut a number of times, causing Plaintiff head pain and temporary hearing loss. The door was not slammed when other inmates were placed in the bull pen; only when Plaintiff was in the bull pen alone.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under §1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff states that the door to the bull pen was not slammed when other inmates were in the area, indicating that the door was capable of being closed in a normal manner and did not need to be slammed. Defendant Lindenburg slammed the door only when Plaintiff was alone in the bullpen, which may indicate a desire on the part of Defendant Lindenburg to specifically cause Plaintiff harm. Because it is not entirely clear at this point whether this was the objective behind the slamming of the door, this count against Defendant Lindenburg cannot be dismissed at this time.

**Pending Motions:**

Plaintiff has filed a motion for expedited review of his complaint (Doc. 22). Plaintiff has also filed a motion to amend his complaint (Doc. 23). Because his claim has undergone threshold review, these motions are **DENIED** as moot.

Plaintiff has also filed a motion for a temporary restraining order and a preliminary injunction (Doc. 22). He claims that these measures are necessary because of the retaliatory actions by some of Menard's personnel. A TRO may issue without notice

> only if (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any,

9

> which have been made to give the notice and the reasons supporting the claim that notice should not be required.

F~ED~.R.C~IV~.P. 65(b).

In considering whether to grant injunctive relief, a district court is obligated to weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence. Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999).

The Court is of the opinion that neither a TRO nor a preliminary injunction should be issued in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*. Moreover, federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. Prison regulations provide for voluntary placement of an inmate in protective custody should the need arise. I~LL~. A~DMIN~. C~ODE~ tit. 20, §501.310 (1987). This should provide an adequate remedy should Plaintiff feel threatened. Therefore, Plaintiff's motion for issuance of a temporary restraining order and a preliminary injunction is **DENIED**.

**Disposition:**

**IT IS HEREBY ORDERED** that Defendants **GAETZ, HARTLINE, R. COWAN, OWENS, THOMAS, CARTWRIGHT, LEE,** and **GILBERT** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall prepare for Defendants **D. REDNOUR, J. COWAN, SPILLER, QUILLMAN, SCHNICKER, LAWRENCE, HAMILTON,** and **LINDENBURG :** (1) a Notice of Lawsuit and Request for Waiver of Service of Summons; and (2) a Waiver of Service of Summons. The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendants' work address or employer address as provided by Plaintiff. If a Defendant fails to sign and return the Waiver to the Clerk within 30 days from the date these forms were sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the address provided by Plaintiff, the Correctional Center shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above, or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the court. Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date on which a true and correct copy of any

document was served on Defendants or their counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to **United States Magistrate Judge Williams** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his address, and that the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.   Failure to comply with this order will cause a delay in the transmission of court documents, and  may result in dismissal of this action for want of prosecution. *See* FED.R.CIV.P. 41(b).

     **IT IS SO ORDERED.**

     **Dated: February 11, 2011**

                             **/s/ MICHAEL J. REAGAN**
                             **U. S. District Judge**