## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREGORY J. TURLEY, #N-08083,    )
                                   )
           Plaintiff,    )
                                   )
vs.                           )    Case No. 09–cv–829–SCW
                                   )
JEANNETTE COWAN, JAY HAMILTON,   )
FRANK LAWRENCE, DONALD   )
LINDENBERG, MARC QUILLMAN,   )
DAVID REDNOUR, MICHAEL   )
SCHNICKER, and BETSY SPILLER,   )
                                   )
          Defendants.

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I.  Introduction

Before the Court is a Motion for Summary Judgment for Failure to Exhaust (Doc. 75) filed by Defendants Jeannette Cowan, Jay Hamilton, Frank Lawrence, Donald Lindenberg, Marc Quillman, David Rednour, Michael Schnicker, and Betsy Spiller.  Specifically, Defendants argue that Plaintiff has failed to exhaust his administrative remedies as the ARB does not have any grievance on file regarding Plaintiff's specific allegations that Defendants retaliated against him by placing him in protective custody, denying him a job, and issuing him a false disciplinary report, nor does he have an exhausted grievance on his claim that Defendant Lindenberg used excessive force against him.  Plaintiff has filed a Response (Doc. 89) and Defendants have filed a Reply (Doc. 91).  The Court held a *Pavey* hearing on January 12, 2012 (Doc. 112).  In response to that hearing, Plaintiff filed a motion to clarify his testimony (Doc. 115) as well as a supplemental exhibit (Doc. 116).  Defendants, in response, have filed a motion to strike Plaintiff's motion to clarify (Doc. 119).  Based on the following, the Court **DENIES** Defendants' motion for summary judgment (Doc. 75).

## II. <u>Background</u>

**A.      Procedural Background**

This matter stems from Plaintiff's Complaint for retaliation and excessive force filed on October 7, 2009 (Doc. 1).  Plaintiff's Complaint alleges that several Defendants, including Defendants Cowan, Rednour, Spiller, Gaetz, Quillman, Schnickers, Lawrence, and Hamilton retaliated against Plaintiff for filing grievances.  Specifically, Plaintiff alleges that in response to grievances he filed regarding staff conduct in July of 2009, Defendants Rednour, Cowan, and Spiller retaliated against Plaintiff by placing him in protective custody (Doc. 26 at p. 4).  While in protective custody, Plaintiff alleges that Defendants Quillman and Schnickers retaliated against him by issuing him a false disciplinary ticket (*Id.*).  Also in retaliation for filing grievances, Lawrence, Hamilton, and Spiller ensured that Plaintiff was denied a job assignment (*Id.*).  Plaintiff's Complaint also alleges that Defendant Lindenberg used excessive force against Plaintiff by slamming a heavy steel door to the bull pen, where Plaintiff was held, shut several times causing Plaintiff head pain and temporary hearing loss (*Id.* at p. 8).

In response to Plaintiff's Complaint, Defendants filed a Motion for Summary Judgment for Failure to Exhaust (Doc. 75).  In the motion, Defendants argued that they were entitled to summary judgment because Plaintiff had failed to exhaust his administrative remedies as to any of his claims against the various Defendants.  Defendants argued that the ARB had reviewed the records for grievances filed by Plaintiff and was unable to locate any grievances filed by Plaintiff regarding his claims in the current suit (Doc. 75 Ex. A at ¶ 6).

Plaintiff filed a responsive brief to Defendants' motion (Doc. 89).  In his response, Plaintiff argued that he had been thwarted from fully exhausting his administrative remedies.  Plaintiff alleges that he filed several grievances regarding the issues raised in his Complaint.  Plaintiff argues that he filed an Emergency Grievance regarding his protective custody placement and the false disciplinary

report on August 10, 2009.  He gave the grievance to a guard to turn over to the warden but he never received the grievance back from the warden (Doc. 89 at p. 4).  Plaintiff also alleges that he filed two more grievances on August 16 and 17, 2009 which were originally filed with Counselor Latoya Owens and answered by Owens on August 21, 2009.  Plaintiff alleges that upon receiving these grievances back from his counselor, he immediately forwarded them to Grievance Officer Cowan, but that he never received the grievances back from Cowan (*Id.* at pp. 4-5; Ex. G).  On September 18, 2009, Plaintiff wrote a note to his counselor, Counselor Shellie Cartwright, inquiring about the status of his several grievances.  Cartwright noted in the Cumulative Counseling Summary and in a memo to Plaintiff that the Grievance Officer did not have any outstanding grievances from Plaintiff, but could have emergency grievances in their possession (Doc. 89 Exs. G & H).

On September 1, 2009, Plaintiff was allegedly assaulted by Defendant Lindenberg, and in response to the assault, Plaintiff filed an emergency grievance on September 1, 2009.  This grievance was logged and received on September 4, 2009 (Doc. 89 Ex. I).  The grievance was returned to him after being deemed a non-emergency and Plaintiff forwarded the grievance to Counselor Cartwright on September 18, 2009 (*Id.*; *see also* Doc. 89 at Ex. G).  Cartwright responded to the grievance on September 21, 2009 (*Id.*).  Plaintiff acknowledges that he received the grievance back from his counselor, but alleges that he then placed the grievance in the institutional mail to be forwarded to the grievance officer.  He alleges that he never received the grievance back.

Based on the Seventh Circuit's opinion in *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008)**, the undersigned held a hearing in the matter on January 12, 2012 (Doc. 112).  The following recommendations are based upon evidence adduced at that hearing.

## B.    Pavey Hearing

At the hearing, the Court identified three issues as to whether Plaintiff had exhausted

his administrative remedies. The first issue was whether Plaintiff was thwarted in his attempts to exhaust his administrative remedies by the Defendants not returning an emergency grievance he filed on August 10, 2009. The second issue before the Court was whether Plaintiff was thwarted in his attempts to exhaust by the grievance office failing to answer his grievances allegedly submitted on August 16 & 17. The last issue before the Court was whether Plaintiff was thwarted in his attempts to exhaust his September 1, 2009 grievance regarding the alleged assault by Defendant Lindenberg.

At the hearing, Terri Anderson, public service administrator for the Illinois Department of Corrections, testified that as part of her employment for the ARB she received and addressed inmate grievances. Anderson testified that she had searched for grievances filed by Plaintiff during the relevant time period and she was unable to locate any grievances related to Plaintiff's claims. Anderson also testified that grievance decisions are delivered by privileged mail directly to the offender while those grievances which are returned unanswered those are returned in bulk mail to the grievance office of the prison.

Jeannette Cowan, Grievance Officer at Menard Correctional Center, next testified as to the grievances that Plaintiff had filed. Cowan testified that upon reviewing the grievance logs for August, she located one grievance received on August 14, 2009 which was processed by the grievance office, sent to the warden for final determination, denied and mailed back to Plaintiff on August 25, 2009. She also pointed out that there was one grievance on the emergency grievance log which was received on August 17, 2009 and sent to the warden on the same day. He determined that it was not an emergency and sent back to Plaintiff with an instruction to pursue his grievance through the normal grievance process.

As to the September grievance log, Cowan located one grievance received on September 4, 2009 which was also deemed not an emergency by the warden and returned to Plaintiff on September

8, 2009.  Cowan testified that this grievance was labeled with "5c" which meant it dealt with protective custody issues.  Cowan also reviewed Menard's Cumulative Counseling Summary which was filled out by Plaintiff's counselors.  Cowan testified that Plaintiff's counselor, Latoya Owens, answered grievances from Plaintiff on August 16 & 17 dealing with staff conduct.   She also testified that emergency grievances which were determined not to be an emergency by the warden are sent back to the grievance office for logging and then returned to inmates through the institutional mail.

Plaintiff also testified regarding his claims that he filed his grievances with the grievance office but never had them returned.  Plaintiff testified that he received his August 16 & 17 grievance back from his counselor and that he did try to pursue the grievances further by sending them to Cowan.  He also received his emergency grievance back from both the warden and then his counselor and then mailed that one also to Cowan on September 21, 2009.  Two days later, on September 23, 2009, he mailed a letter to the ARB regarding his missing grievances from August.  Plaintiff testified that he wrote the letter to the ARB after receiving a note from his counselor indicating that the grievance office had no outstanding grievances from Plaintiff.

After the hearing, Plaintiff filed a Motion to Clarify Record and Testimony (Doc. 115) seeking to clarify some of the testimony he gave at the Pavery hearing due to his confusion regarding some of the questions asked of him.  Defendants filed a motion to strike that motion (Doc. 119).  Plaintiff subsequently filed a Response to the motion to strike (Doc. 123).   Plaintiff also filed an exhibit which included the missing pages of his Exhibit P (Doc. 116).  The Court **GRANTS** Defendants' motion to strike (Doc. 119) Plaintiff's motion to clarify (Doc. 115) and bases its decision on the record as of the conclusion of the *Pavey* hearing.

### III.  <u>Summary Judgment Standard</u>

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010)**.  The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor.  *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA").  **42 U.S.C. § 1997e(a)**.  That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id*.  **(emphasis added)**.  The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.  *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**.  Exhaustion must occur before the suit is filed.  *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**.  Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending.  *Id*.  Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require."  *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**.  Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted."  *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.  *Pavey*, **544 F.3d at 740-41.**  Thus, where failure to exhaust

administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

## IV.   <u>Discussion</u>

### A.   Exhaustion Requirements Under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.  **20 Ill. Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint.  **20 Ill. Admin. Code § 504.810(a)**.  Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.  *Id*.  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must

include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**  "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."  **20 Ill. Admin. Code §504.830(d).**  If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").  The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.  Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."  **20 Ill. Admin. Code §504.850(a).**  "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."  **20 Ill. Admin. Code §504.850(e).**  "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision."  **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance.  In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may  "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis.  **20 Ill. Admin. Code  §504.840(a).**  If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the

grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.  **20 Ill. Admin. Code §504.840(b)**.   Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.  **20 Ill. Admin. Code §504.850(g)**.

**B.      Analysis**

 **1.      August Grievances**

  Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to his claims regarding retaliation by the Defendants by placing him in protective custody and issuing him a false disciplinary report while in protective custody.  Those claims were the subject of three grievances Plaintiff alleges that he filed with the grievance office in August, including an emergency grievance dated August 10, 2009 and two non-emergency grievances dated August 16 and 17, 2009.  Defendants claim that Plaintiff failed to exhaust those three grievances as he failed to pursue those grievances throughout the entire grievance process, while Plaintiff maintains that he was thwarted in his attempts to exhaust all three grievances.

  The Court, however, finds Plaintiff's testimony that he filed those grievances with the grievance officer but never received any of the grievances back to be reliable.  Plaintiff testified that he sent his August 10, 2009 grievance to the warden but never received a response.  As to the August 16 and 17 grievance, Plaintiff acknowledged that he first sent those to his counselor, Ms. Owens, and received them back on August 21, 2009 (Doc. 89 Ex. G).  Plaintiff testified, however, that upon receiving the grievance back from Counselor Owens, he mailed them out the same day to the grievance officer.  Plaintiff testified that he never received them back from Defendant Cowan.

  Plaintiff's testimony is also backed by the evidence in the record.  Plaintiff spoke with his counselor, at the time Counselor Shellie Cartwright, about his grievances not being responded to,

which presumably included his August 10, 16, and 17 grievances. Counselor Cartwright  noted in her Cumulative Counseling Summary on September 18 that she contacted the Grievance Officer and no grievances were pending before the Grievance Officer (Doc. 89 Ex. G).  Counselor Cartwright also noted in a separate memo that she had been informed by the Grievance Officer that no outstanding grievances were in the Grievance Officer's possession (Doc. 89 Ex. H).   Plaintiff also wrote a letter to the ARB which is stamped as having been received by the ARB on September 25, 2009.  In that letter, he noted that grievances filed with the Menard Grievance Officer, including an emergency grievance on August 11, 2009, and the two grievances filed on August 16 and 17 were missing (*Id.* at Ex. R).  The statements made in this letter correspond with Plaintiff's testimony that he had submitted the grievances, but that he had never had them returned.  The statements also track with Plaintiff's discussion with Counselor Cartwright about his grievances and her determination that no grievances were pending, prompting Plaintiff's September 23, 2009 letter to the ARB.  Plaintiff also filed an emergency grievance on September 20, 2009 regarding his lost grievances which were deemed a non-emergency by the Warden (Doc. 89 Ex. T).   It is evident to the Court from Plaintiff's testimony and the corresponding documents in the record that Plaintiff truthfully testified that he submitted the August 10, 16, and 17 grievance but never received them back from the grievance office.[1]

---

[1]  The Court notes that Plaintiff also alleges that he sent letters to both his Counselor and the Warden regarding his missing grievances (*See* Doc. 89 Exs. M, K, & L).  These letters, addressed to Counselor Goforth, Counselor Cartwright, and Warden Gaetz also ask about the status of his missing grievances, including the emergency grievance dated August 10 and the grievances from August 16 & 17.  However, unlike the letter to the ARB, these letters offer no indication that they were ever received by their intended recipients.  In fact, the letter to Counselor Goforth is labeled as a "Copy" and presumably is not the actual letter allegedly sent to Plaintiff's counselor.  As there are no facts in evidence collaborating these letters or the fact that Plaintiff sent, and the recipients received these letters, the Court does not rely on these letters as evidence that Plaintiff filed his grievances with the grievance officer.  However, the Court finds that it need not rely on these letters as there is enough evidence in the record to suggest that Plaintiff did indeed follow proper procedure in filing his grievances properly with the grievance office and the grievances were not returned to Plaintiff.

Having properly followed administrative procedure and filed his grievances with the grievance officer, Plaintiff was not required to further exhaust his remedies when he failed to receive a response from Defendants. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D.Ill 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)).**  Plaintiff did try to further pursue his issues with Menard by writing a letter to the ARB regarding his missing grievances, informing the ARB of his frustration with the missing grievances, his belief that his ability to exhaust was being thwarted, and his intention to file a civil rights law suit (Doc. 89 Ex. R).  However, for exhaustion purposes Plaintiff was not required to pursue his grievances any farther after not receiving them back from the Grievance Officer as he had exhausted all of the administrative remedies available to him under **42 U.S.C. § 1997e(a)**. *See Kaba*,**458 F.3d at 684 (if administrative remedies are not available then prisoner can not be required to exhaust)**.

While Defendants try to argue that Plaintiff never properly exhausted these grievances by failing to pursue his grievances throughout the entire grievance process at Menard by relying on Cowan's testimony that she had no record of any of the grievances, the Court finds Defendant's record-keeping to be unreliable.  The Court was presented with several instances in the record where the record-keeping at Menard proved faulty.  At the *Pavey* hearing, Defendant Cowan noted that Plaintiff's September 1, 2009 grievance received on September 4, 2009 was about protective custody as it was

labeled "5c" in the log.  However, Plaintiff attached the grievance in his Complaint and the topic of the grievance clearly relates to an alleged assault by Defendant Lindenberg (See Doc. 1 Ex. G).  The grievance indicates that it was reviewed by the warden and returned to Plaintiff as a non-emergency on September 4, 2009, and is labeled as grievance B8, the same as the grievance labeled in the September Emergency Grievance log which Cowan testified was regarding protective custody due to its "5c" labeling (Doc. 89 Ex. I).  The  Cumulative Counseling Summary also indicates that this grievance was about staff misconduct on the part of Lindenberg and not protective custody (*Id.* at Ex. G).   The evidence in the record at the very least calls the grievance logs into question as the logs have been proven inaccurate by other documents in evidence.

Further, the Court notes that Cowan noted in her interrogatories to Plaintiff that she did not have any record of grievances sent by Plaintiff and dated July 21 or 30 of 2009 (Doc. 89 Ex. U). However, Plaintiff received, as part of his discovery, copies of both grievances which were reviewed and ruled on by the Grievance Officer and included on the grievance log for August 2009 (See Doc. 89 Exs. C, D, E and B).  While the Court recognizes that these grievances are not the ones at issue in Defendants' motion, they are further evidence that Menard's record keeping is less than reliable.  It also supports Plaintiff's claim that he regularly did not receive grievances back from the grievance office as he did not receive copies of these grievances until the discovery process, having only filed copies of the grievances along with his Complaint because he claimed that the grievances were never returned to him.  Given the inaccuracies found in the grievance logs, the Court cannot conclude that the logs are accurate when deciding whether Plaintiff submitted other grievances that were either not labeled as received or labeled incorrectly in the logs, especially in light of the Plaintiff's testimony and corroborating evidence.

## 2.     September Grievance Regarding Lindenberg

Defendants also argue that Plaintiff has failed to exhaust his claims as to Defendant

Lindenberg's alleged assault as Plaintiff failed to submit his grievance to the grievance office after receiving a copy back from his counselor.   From the exhibits presented in the record, which it appears the parties do not dispute, Plaintiff filed an emergency grievance regarding the Lindenberg assault on September 1, 2009 (Doc. 89 Ex. I; Doc. 1 Ex. G).[2]  That grievance was returned to Plaintiff on September 8, 2009 after the warden determined that it was not an emergency (*Id.*).  Plaintiff then submitted the grievance to his counselor, Shellie Cartwright, who responded to the grievance on September 21, 2009 after determining that she had been unable to verify Plaintiff's allegations (Doc. 89 Ex. G; Doc. 1 Ex. G).  His letter to the ARB also indicated that he received a response from Counselor Cartwright (Doc. 90 Ex. R).  Plaintiff testified that he placed this grievance in the mail to Ms. Cowan on the same day that he received it back from Counselor Cartwright, but he never received a response from the grievance office.  The Court found Plaintiff's testimony that he was thwarted in his attempts to exhaust the Lindenberg grievance to be credible given its consistency with the other documents in evidence.

Defendants, however, failed to refute Plaintiff's testimony.  Defendants did offer the grievance logs as evidence that Plaintiff failed to pursue his grievance by filing it with the grievance office but, as the Court has already discussed, those logs have been proven inaccurate and unreliable. Further, Defendants make much of the fact that Plaintiff filed a letter with the ARB two days after he testified that he submitted the grievance to the Grievance Officer regarding the Lindenberg assault. Defendants argue that he could not have exhausted the grievance at the time that he sent the letter as only two days had elapsed and make much of the fact that Plaintiff indicates he will file a federal lawsuit

---

[2]  While Cowan testified that the September emergency grievance reviewed by the warden on September 4, 2009 was a grievance regarding protective custody due to its "5c" classification, the grievance itself, which was attached to Plaintiff's Complaint, indicates that it dealt with the Lindenberg assault.

on the issues soon.  However, the letter does not indicate that the Lindenberg grievance was lost at that time or that Plaintiff had not sought to exhaust the grievance further.  Instead, the letter simply informs the ARB that Plaintiff had filed two grievances to his Counselor, including the September 1, 2009 grievance regarding Lindenberg, and only the Lindenberg grievance had been returned to him from his counselor.  The other grievance submitted at the same time, regarding the stripping of his personal property, was missing and Plaintiff appears to mention this as an example of the numerous grievances that have gone missing from Menard.   The Defendants fail to point out how the mention of the September 1, 2009 grievance refutes Plaintiff's testimony that he tried to fully exhaust this grievance, nor have they presented any other evidence refuting Plaintiff's testimony.

Thus, the Court finds that Defendants have failed to meet their burden of showing that Plaintiff failed to properly exhaust his administrative remedies as to the Lindenberg grievance.  Like with the August grievances, the Court finds that Plaintiff tried to exhaust his administrative remedies and was thwarted from doing so by Menard's failure to respond to the Lindenberg grievance.  Thus, Plaintiff had done all that he could for purposes of exhaustion.  *See Dole*, **438 F.3d 809.**  Accordingly, the Court finds that summary judgment as to the Lindenberg grievance is **DENIED**.

### 3.        Denial of Job Assignment

The Court also notes that Plaintiff's Complaint and this Court's **§ 1915** threshold Order indicated that Plaintiff had raised a claim that the Defendants had retaliated against him by denying him job assignments.  However, Plaintiff has failed to allege in any of his filings that any of his grievances related to the denial of job assignments.  Plaintiff notes in his responsive pleading that his grievances in August dealt with his protective custody placement and a false IDR issued against him and that his September grievance dealt with the alleged assault by Lindenberg.  However, none of the grievances appear to deal with the denial of a job assignment, nor does his letter to the ARB suggest that any

grievances regarding a job denial are missing.  Thus, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to this claim and therefore **DISMISSES without prejudice** Plaintiff's claim that Defendants retaliated against him by denying him job assignments.

## V.  Conclusion

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on all accounts and finds that Plaintiff was thwarted in his attempts to exhaust his administrative remedies as to the claims in his Complaint.  However, the Court notes that none of Plaintiff's grievances contained allegations that Defendants denied him a job assignment and thus the Court **DISMISSES without** prejudice that claim.

**IT IS SO ORDERED**.

DATED: March 23, 2012.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge