IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY J. TURLEY,                )<br>                                                    )<br>            Plaintiff,                      )<br>                                                    )<br>vs.                                               )           Case No.  09–cv–829–SCW<br>                                                    )<br>DAVID REDNOUR, JEANETTE   )<br>COWAN, BETSY SPILLER, MARC )<br>QUILLMAN, MICHAEL SCHNICKER, )<br>and DONALD LINDENBERG          )<br>                                                    )<br>            Defendants.                  | |

# MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

## I. Introduction

Before the Court is Defendants' Motion for Summary Judgment (Doc. 131). Specifically, Defendants David Rednour, Jeannette Cowan, Betsy Spiller, Marc Quillman, and Michael Schnicker seek summary judgment on Plaintiff's retaliation claim, while Defendant Donald Lindenberg argues that he is entitled to qualified immunity on Plaintiff's excessive force claim. Plaintiff has filed a Response in opposition to the motion (Doc. 144). Based on the following, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 131).

## II. Background

The claims that remain in this case, which Defendants claim that they are entitled to summary judgment on, are Plaintiff's retaliation claim against Defendants Cowan, Rednour, and Spiller for Defendants moving Plaintiff to protective custody, a retaliation claim against Defendants Quillman and Schnicker for writing a false disciplinary ticket against him, and an excessive force claim against

Defendant Lindenberg for slamming the cell door too loudly causing Plaintiff injury to his hearing.[1] The following facts are derived from the parties' briefs and exhibits.

On August 4, 2009, Plaintiff wrote a letter to Defendant Cowan with two grievances regarding the retaliation Plaintiff was experiencing from personnel.[2] The letter informed Defendant Cowan that Plaintiff was "under attack by personnel at this facility" and that it was his intention "to go to Protective Custody here in the very near future as [his] life is in danger" due to attacks by staff (Doc. 89 Ex. V). The attached grievances alleged that Plaintiff had been transferred to the South Lower Cellhouse in retaliation, and due in part to a conspiracy to retaliate against him, by numerous employees and that employees were improperly promoted and were not qualified for their current positions (Doc. 144 Ex. A). The grievances listed Defendant Spiller as one employee that was conspiring against him (Doc. 144 Exs. B & C). Defendant Cowan contacted Defendant Rednour, the acting Shift Commander, about Plaintiff's concerns and protective custody request which she had construed from the letter (Doc. 144 Ex. I at ¶¶ 3 & 21). Plaintiff was moved to protective custody on August 6, 2009. Neither Defendant Cowan nor Defendant Rednour informed the Warden of Plaintiff's transfer (Doc. 144 Ex. F at ¶ 14; Ex. I at ¶¶ 21 & 22).

On August 9, 2009, while in protective custody, Defendant Quillman wrote a disciplinary ticket charging Plaintiff with Damage or Misuse of Property, Intimidation or Threats and Insolence (Doc. 1 Ex. F). The incident report indicates that Defendant Quillman was passing out toilet paper to inmates, including Plaintiff, and after handing Plaintiff a roll of toilet paper and while Defendant Quillman was walking away, Plaintiff threw the roll on the gallery and began cussing at

---

[1] Plaintiff maintains in his responsive pleading that his claim against Defendant Lindenberg has been misconstrued and that the claim is actually one for retaliation.

[2] Defendant Cowan, in her response to interrogatories, denies that the grievances were attached to the August 4, 2009 letter (Doc. 144 Ex. I at ¶ 5)..

Defendant Quillman (*Id.*). Defendant Quillman wrote the disciplinary ticket and listed Defendant Schnicker as a witness (*Id.*). Defendant Quillman was assigned to North 1 back of 4 Gallery of August 9, 2009, and it was his job duty to pass out weekly supplies of toilet paper (*Id.*; Doc. 144 Ex. J at ¶¶ 3, 8, & 15).

On September 1, 2009, Plaintiff was taken to an interview with Internal Affairs Investigator Thomas regarding Plaintiff's "Enemy List", a list of several staff members that Plaintiff considered his enemies (Doc. 144 Ex. Q). Defendant Lindenberg was one of the individuals named on Plaintiff's list (*Id.*). Lindenberg was in charge of the Infirmary Area Bull Pen on the date that Plaintiff was held in the Bull Pen while awaiting his interview with Thomas. Lindenberg placed Plaintff, who was handcuffed, in the Bull Pen (Doc. 71 at ¶ 26). Plaintiff alleges that while waiting in the Bull Pen to go back to his cell, Lindenberg yelled and cursed at Plaintiff and after removing another inmate from the Bull Pen, Lindenberg slammed the steel door causing harm to Plaintiff's ears.

### III. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted)(citing FED.R.CIV.P. 56(a));** *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005)..** The party seeking summary judgment bears the initial burden of demonstrating - based on the pleadings, affidavits, and/or information obtained via discovery - the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**.

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

*Lobby, Inc.*, **477 U.S. 242, 250 (1986)(quoting FED.R.CIV.P. 56(e)(2)).**[3] A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmovent's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted)**.

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009)**. The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d at 512.** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

---

[3] Rule 56 was revised in December 2010. According to the Report of the Judicial Conference Committee on Rules of Practice and Procedure, the revisions "are not intended to change the summary judgment standard or burdens." Judicial Conference Committee on Rules of Practice and Procedure, Report to the Chief Justice of the United States and Member of the Judicial Conference of the United States, 14 (Sept. 2009), available at: http://www.uscourts.gov/uscourts/RulesAndPolices/rules/Reports/Combined_St_Report_Sept_2009.pdf.

### IV. <u>Analysis</u>

**A.     Retaliation**

A prisoner has a right under the First Amendment to challenge the conditions of his confinement by filing grievances, and prison officials are not allowed to retaliate against an inmate for exercising his First Amendment Rights. *See DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000)(citing** *Babcock v. White*, **102 F.3d 267, 274-75 (7th Cir. 1996)).** In order to establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was "engaged in activity protected by the First Amendment" and that he "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009).** Plaintiff must also demonstrate that "his speech was at least a motivating factor in the [defendant's] action" in order to make his *prima facie* case. *Zellner v. Herrick*, **639 F.3d 371, 378-79 (7th Cir. 2011) (citing** *Massey v. Johnson*, **457 F.3d 711, 716 (7th Cir. 2006)).** However, once Plaintiff has made his *prima facie* case, the burden shifts to defendant "to rebut with evidence that the [defendant's animus] though a sufficient condition was not a necessary condition of the conduct, i.e. it would have happened anyway." *Greene v. Doruff*, **660 F.3d 975, 980 (7th Cir. 2011).** Plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner*, **639 F.3d at 379.** At the summary judgment stage of proceedings, "mere speculation" on the plaintiff's part is insufficient; instead, a plaintiff must come forward with some evidence of causation. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, **544 F.3d 752, 757 (7th Cir. 2008)**.

Plaintiff also alleges in his Complaint that the acts of retaliation taken against him were part of a larger conspiracy by the Defendants to retaliate against him. A claim of civil conspiracy is actionable but is not an independent basis for liability under § 1983. *See Lewis v. Washington*, **300**

**F.3d 829, 831 (7th Cir. 2002);** *Smith v. Gomez*, **550 F.3d 613, 617 (7th Cir. 2008)**. In order for liability to attach to a conspiracy claim, the "defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, **93 F.3d 418, 422 (7th Cir. 1996)**. In order to succeed on his conspiracy to retaliate claim, Plaintiff must demonstrate: (1) that the defendants had an express or implied agreement to deprive him of his constitutional rights, and (2) he was deprived of his constitutional rights by defendants' overt actions in furtherance of the agreement. *Williams v. Seniff*, **342 F.3d 774, 782 (7th Cir. 2003);** *Scherer v. Balkema*, **840 F.2d 437, 442 (7th Cir. 1988)**.

　　　1.　　*Plaintiff's Placement in Protective Custody*

Defendants Rednour, Cowan, and Spiller argue that they are entitled to summary judgment on Plaintiff's retaliation claim for being placed in protective custody because there is no evidence that Defendants were motivated by Plaintiff's grievances and Plaintiff, himself, asked to be moved to protective custody in his grievances. Plaintiff, however, has offered evidence that Cowan, Rednour, and Spiller conspired to retaliate against him because he submitted grievances to Defendant Cowan complaining about several staff employees prior to his being transferred to protective custody. He also has pointed to evidence that Defendant Rednour knew about the grievance as Defendant Cowan called Rednour to inform him of the grievance and Rednour made the decision to then place him in protective custody even though only the Warden or Chief Administrative Officer (hereinafter "CAO") had authority to place inmates in protective custody (Doc. 144 Ex. L, IDOC Rules 501.350(a)).

While Plaintiff has offered evidence that he engaged in protected conduct and that Defendants knew about that conduct when they moved Plaintiff to protective custody, Plaintiff has failed to offer evidence that his transfer to protective custody was done out of retaliation for filing the grievances. Nor has Plaintiff shown that this was the type of action that was done to deter him from filing grievances in the future. Rather, the evidence suggests that Defendants Cowan and Rednour

placed Plaintiff in protective custody as a result of his letter requesting such placement. The August 4, 2009 letter states that Plaintiff is under attack from personnel in the prison and that, although he has been informed he is eligible for a transfer to Stateville, he can not go to Stateville due to staff issues at that facility as well. Plaintiff then states that it is his "intention to go to Protective Custody here in the very near future as my life is in danger do to staff attacking me." (Doc. 144 Ex. A). Defendants maintain that they viewed this statement as a request to go into protective custody. Plaintiff argues that his August 4, 2009 letter did not ask for protective custody but rather indicated his future intentions to seek protective custody, but a clear reading of the letter indicates that Plaintiff is seeking protective custody because he fears for his life. There is no evidence that Defendants retaliated against him; the evidence suggests that Defendants responded to what they reasonably believed to be a request for protective custody. Further, the Court fails to see how placing Plaintiff in protective custody could be designed to chill Plaintiff's speech when Defendants gave Plaintiff what they thought he wanted, placement in protective custody.

Plaintiff also argues that he has evidence that the transfer was pretextual and that it was really done in retaliation and not due to his request for protective custody. Plaintiff points out that although his grievance was regarding staff enemies that he felt threatened by, the Defendants have admitted on several occasions that Plaintiff can not have staff enemies (Doc. 144 Ex. F at ¶ 16; Ex. I at ¶ 25).[4] Plaintiff, in essence, argues that Defendants could not have placed Plaintiff in protective custody for the reasons stated because Plaintiff was not allowed to request protective custody for staff enemies. Further, Plaintiff points to evidence that Defendants did not follow the proper rules for

---

[4] Plaintiff points out that Defendant Rednour indicated that staff problems must be dealt with through grievances procedures or investigations by Internal Affairs (Doc. 144 Ex. F at ¶¶ 9, 16, & 17). Plaintiff also points to the testimony of Terri Anderson who stated during the *Pavey* hearing that protective custody was only for inmate issues, not issues with staff (Doc. 144 Ex. M at p. 37).

placing an inmate in protective custody.[5] Defendants admit that they did not contact the Warden when Defendant Rednour placed Plaintiff in protective custody.[6] Plaintiff offers that the decision of Defendants Rednour and Cowan to not contact the Warden but instead to make the decision to place Plaintiff in protective custody themselves shows that they conspired to retaliate against him.

While the Court agrees that all of Plaintiff's allegations might be true, the Court still finds that there is no evidence to show that Plaintiff was transferred to protective custody in order to chill his speech. While there is evidence that Defendants did not follow IDOC rules and transferred him for reasons not usually allowed under the rules (namely staff enemies), this does not evidence retaliation. In fact, the evidence suggests that Defendants broke the rules, if for any reason, in order to placate Plaintiff's request to go to protective custody. Thus, the Court finds that there is no evidence to suggest that Defendants transferred Plaintiff to protective custody in retaliation for his filing grievances. Accordingly, the Court finds that Defendants Rednour and Cowan are entitled to summary judgment at this time.

Also as to Defendant Spiller, the Court finds that Plaintiff has failed to offer any evidence that Spiller participated in Plaintiff's transfer to protective custody or even knew about Plaintiff's grievances. Plaintiff's only evidence regarding Spiller is that she, along with other employees, was mentioned in the grievances that Plaintiff sent on August 4, 2009 which Plaintiff alleges resulted in the retaliation against him. However, Plaintiff has failed to point to any evidence that Spiller knew

---

[5] Under Illinois Department of Correction Rules, Plaintiff points out that the proper procedure when learning of a threat to an inmate is to transmit the information regarding a threat to the Chief Administrative Officer, in this case the Warden, who would then offer the inmate protective custody (Doc. 144 Ex. L, IDOC Rules 501.350(a)).

[6] Specifically, Defendant Cowan stated that she did not contact the Warden or CAO because the shift commander made the decision to transfer Plaintiff, not her (Doc. 144 Ex. I at ¶¶ 21 & 22). Defendant Rednour also admitted that he did not contact the Warden before placing Plaintiff in protective custody (Doc. 144 Ex. F at ¶ 14).

of the grievances against him. Although he states that Cowan called Defendant Rednour about the grievance, and Plaintiff has offered evidence suggesting as much, he fails to point to any evidence that Defendant Spiller was informed of the grievances. Nor is there any evidence that Spiller participated in the transfer of Plaintiff to protective custody. Defendants admit that Defendant Rednour transferred Plaintiff to protective custody, not Defendant Spiller. Further, Plaintiff readily admits that Spiller was the Menard Clinical Services Supervisor. While Plaintiff argues that Spiller was promoted to new posts which allowed her to retaliate against Plaintiff and that she and Rednour moved Plaintiff, there is no evidence suggesting that the clinical services supervisor had any hand in transferring inmates or that Spiller participated in this transfer of Plaintiff. Thus, Plaintiff has failed to point to any evidence that Spiller participated in any conspiracy to transfer Plaintiff. Accordingly, the Court finds that Spiller is also entitled to summary judgment on this claim.

### 2. *Issuance of Disciplinary Ticket*

Defendants Schnicker and Quillman also contend that they are entitled to summary judgment on Plaintiff's retaliation claim for writing him a disciplinary ticket. As to Defendant Quillman, Plaintiff alleges that he conspired with Defendant Rednour to write Plaintiff a false disciplinary ticket. As proof that Defendant Quillman retaliated against Plaintiff, Plaintiff offers a conspiracy theory between Quillman, Rednour, Cowan, and Spiller, where Quillman acted at the direction of Defendant Rednour to write a false disciplinary ticket against Plaintiff. Plaintiff contends that Defendant Rednour had to have a disciplinary ticket issued against Plaintiff in order to move him to segregation, so Defendant Quillman wrote him a disciplinary ticket even though he did not work on the gallery, did not pass out toilet paper to inmates, and there was no disturbance from Turley. However, Plaintiff's conspiracy theory is just that, a theory. Plaintiff fails to offer any evidence to back up his assertions.

Further, there is no evidence to suggest that Plaintiff's grievances were the motivating

factor for Defendant Quillman issuing the disciplinary ticket. Plaintiff does not offer any evidence that Defendant Quillman even knew about the grievances and there is no suggestion that the grievances even mentioned Quillman. *Gunville v. Walker*, **583 F.3d 979, 984 (7th Cir. 2009) (in order to show that a defendant's actions were motivated by plaintiff's first amendment activities, plaintiff must show that defendant knew of the protected activity);** *Babcock v. White*, **102 F.2d 267, 275 (7th Cir. 1996) (must establish protected conduct was motivating factor).** Plaintiff has also failed to produce any evidence that Defendants Quillman and Rednour had an agreement to retaliate against Plaintiff. Instead, the facts in the record show that Defendant Quillman was assigned by the Shift Commander to work in the protective custody unit on August 9, 2009 and that he was passing out toilet paper to the inmates as part of his duties when Plaintiff began cussing and threw his toilet paper (Doc. 144 Ex. J at ¶¶ 3, 8, & 16; Doc. 1 Ex. F). Even assuming Defendant Rednour was the Shift Commander on that date, there is no evidence suggesting that the two conspired together to retaliate against Plaintiff. Accordingly, the Court finds no evidence in the record to back up the *theory* Plaintiff poses regarding Defendant Quillman's conspiracy to retaliate against Plaintiff. Thus, the Court finds that Defendant Quillman is entitled to summary judgment on Plaintiff's retaliation claim.

      The Court also finds that Defendant Schnicker is entitled to summary judgment. As to Defendant Schnicker, Plaintiff fails to offer any evidence that he was even involved in writing the disciplinary ticket. In fact, Defendant Schnicker is only listed on the ticket as a witness and there is nothing to indicate, nor does Plaintiff even argue, that Defendant Schnicker wrote or was involved in issuing the disciplinary ticket to Plaintiff. Thus, the Court finds that Defendant Schnicker is also entitled to summary judgment on Plaintiff's retaliation claim.

**B.**     **Qualified Immunity**

Defendant Lindenberg argues that he is entitled to summary judgment on Plaintiff's excessive force claim against him because he is entitled to qualified immunity. To defeat a defense of qualified immunity, a plaintiff must demonstrate "(1) that the guard's conduct violated his constitutional rights, and (2) that the violated right was clearly established at the time of the alleged misconduct." *Lewis v. Downey*, **581 F.3d 467, 478 (7th Cir. 2009)(citing** *Siegert v. Gilley*, **500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991));** *Phelan v. Village of Lyons*, **531 F.3d 484, 487 (7th Cir. 2008).** The Court has sound discretion in determining which prong to analyze first. *Stainback v. Dixon*, **569 F.3d 767, 770 (7th Cir. 2009) (citing** *Pearson v. Callahan*, **555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)).**

Here, Plaintiff has failed to demonstrate that Lindenberg's single occasion of slamming the cell door constituted excessive force and thus a violation of Plaintiff's constitutional rights. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, **503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992);** *De Walt v. Carter*, **224 F.3d 607, 619 (7th Cir. 2000).** Such force is described as the "unnecessary and wanton infliction of pain." *Forrest v. Prine*, **620 F.3d 739, 744 (7th Cir. 2010).** The test for whether such force is excessive is whether the force was used in "a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." *Id.*; *Outlaw v. Newkirk*, **259 F.3d 833, 837 (7th Cir. 2001);** *Santiago v. Walls*, **599 F.3d 749, 757 (7th Cir. 2010).** The Court uses several factors in order to determine whether the force was legitimate or malicious including: "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to tempter the severity of the force used, and the extent of the injury that force caused to

an inmate." *Santiago*, **599 F.3d at 757 (quoting** *Fillmore v. Page*, **358 F.3d 496, 504 (7th Cir. 2004));** *see also Forrest*, **620 F.3d at 744-45 (citing** *Lewis v. Downey*, **581 F.3d 467, 477 (7th Cir. 2009)).** While *de minimis* use of physical force is excluded from cruel and unusual punishment, the Seventh Circuit has recently "retired" that phrase as it was not meant to revive a significant injury requirement. While minimal force is not actionable, real injury from significant force is; a prisoner does not have to show a significant injury in order for force to violate the Eighth Amendment. *Washington v. Hively*, **Case No. 23-2657, 2012 WL 3553419, at \* 2 (7th Cir. 2012);** *Guitron v. Paul*, **675 F.3d 1044, 1046 (7th Cir. 2012).** Further, unwanted touching which is intended to humiliate a prisoner can violate the constitution even if the force is technically not significant. *See Washington*, **2012 WL 3553419 at \*1.**

Here, Plaintiff has failed to offer any evidence that any type of force was used against him. Instead, Plaintiff alleges that Defendant Lindenberg cussed at him and slammed the cell door causing a loud noise. However, the Court agrees with Defendants that there is simply no case law to suggest that slamming a door once in a prisoner's presence is a use of force. While Plaintiff points to case law suggesting that incessant noise can constitute cruel and unusual punishment, *see Powers v. Snyder*, **484 F.3d 929, 932 (7th Cir. 2007)**, here Plaintiff only alleges that Defendant Lindenberg slammed the door loudly once when he was removing a prisoner. There is no evidence that Plaintiff was hit by the door or that he was in a location of the cell which put him in danger of being hit by the door or that he was subject to continuos slamming of the door. Nor is there evidence that Defendant closed the door in a way that was done maliciously to cause harm. There simply was no use of force by Defendant Lindenberg. Thus, there is no evidence that Lindenberg's actions violated Plaintiff's constitutional rights. The Court, therefore, finds that Lindenberg is entitled to summary judgment on Plaintiff's excessive force claim.

Plaintiff also puts forth that he did not allege an excessive force claim but rather alleged a retaliation claim. Plaintiff points out that the act of slamming the door was "another distinct act of retaliation" for Plaintiff reporting other bad acts of Lindenberg, such as placing Lindenberg on his enemy list. However, in order to be actionable, the alleged retaliation must be the sort that would "deter a person of ordinary firmness" from exercising their First Amendment rights. *Bart v. Telford*, **677 F.2d 622, 625 (7th Cir. 1982);** *Bridges v. Gilbert*, **557 F.3d 541, 555 (7th Cir. 2009).** The Court finds that a single act of slamming the door loudly and cussing would not deter a person of ordinary firmness from exercising his First Amendment rights. As the Seventh Circuit noted in *Bart,* "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Id*. Further, Plaintiff was not deterred from filing grievances as he continued to file grievances long after his encounter with Lindenberg. *See also Antoine v. Uchtman*, **275 Fed. Appx. 539, 2008 WL 1875948, at * 1-2 (7th Cir. 2008) (threats and racist statements did not constitute retaliation when guards took no concrete action to dissuade the inmate from filing grievances and the record was clear that the inmate continued to file grievances despite the threats).** All Plaintiff alleges is that Defendant cussed at him and slammed a cell door loudly. As the Seventh Circuit stated in *Antoine*, "the Constitution does not compel guards to address prisoners in a civil tone using polite language" and public actors may express their dissatisfaction with a private actor's speech. *Antoine*, **275 Fed. Appx 539, 2008 WL 1875948, at * 1-2.** Accordingly, as Plaintiff has failed to offer any evidence of retaliation by Defendant Lindenberg. Thus to the extent Plaintiff alleges a claim of retaliation against Lindenberg, Defendant Lindenberg is entitled to summary judgment on that claim.

V. <u>Conclusion</u>

Accordingly, the Court **GRANTS** the summary judgment motion filed by Defendants

David Rednour, Jeannette Cowan, Betsy Spiller, Marc Quillman, Michael Schnicker, and Donald Lindenberg and dismisses Plaintiff's remaining claims against those Defendants. As there are no issues left for trial, the Court **ORDERS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED**.

DATED: October 25, 2012.

/s/ *Stephen C. Williams*

STEPHEN C. WILLIAMS

United States Magistrate Judge